UNITED STATES of America, Appellee,

v.

Gene Wayne BARRETT, Sr., Appellant.

No. 90–5537.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1991.

Decided July 3, 1991.

Michael McNabb of Burnsville, Minn., for appellant.

Jeanne Graham, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and DUMBAULD,* District Judge.

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

BOWMAN, Circuit Judge.

Gene Wayne Barrett, Sr. was convicted in the District Court[1] of sexual abuse, a violation of 18 U.S.C. § 2242(2)(B) (1988). He appeals both his conviction and sentence. We affirm.

## I.

On August 13, 1989, police officers from the Red Lake Indian Reservation in Minnesota were dispatched to Barrett's home. They determined that a sexual assault possibly had occurred, and had the putative victim examined at the Red Lake Hospital. At the hospital, the victim told the examining doctor that she had been raped by Barrett. She told the doctor that she had struggled with Barrett, but that he had not hit her. Later that day, police officers interviewed the victim. She told them that she had been asleep in a bedroom of the house,[2] and was awakened when Barrett was on top of and inside of her. She stated that she pushed Barrett off of her as soon as she realized what was happening. She also was interviewed on August 13 by an FBI agent. During this interview, the victim said that she had been awakened by her clothes being pulled off. She told the agent that she told Barrett to get off of her.

Barrett was originally charged with engaging in sexual penetration by the use of force in violation of 18 U.S.C. § 2241(a) (1988). Shortly before the trial, the victim was interviewed again by FBI agents. After this interview, the government obtained a superseding indictment charging Barrett with the crime of engaging in or attempting to engage in sexual penetration with a person who is physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act. 18 U.S.C. § 2242(2)(B). Following a jury trial, Barrett was found guilty of violating Section 2242(2)(B). The District Court imposed a sentence of sixty-five months.

On appeal, Barrett raises six issues: (1) the evidence is insufficient to prove the physical incapacity of the victim; (2) the District Court erred in admitting testimony from a police officer about a statement made by Barrett's wife; (3) the District Court erred in allowing allegedly repetitive testimony by law enforcement personnel; (4) the District Court erroneously limited the defendant's cross-examination of the victim; (5) the District Court erroneously limited the defendant's cross-examination of an FBI agent; and (6) the sentencing guidelines applied by the District Court are inconsistent with the Sentencing Reform Act and should be disregarded.[3]

## II.

■ Barrett first contends that the evidence produced at his trial is insufficient to prove that the victim was physically incapable of declining participation in the sexual act.

When a defendant attacks a conviction because of insufficiency of evidence, this court must "view the evidence, including all reasonable inferences ..., in the light most favorable to the Government." ... [W]e must not reweigh evidence, but only decide if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. The victim is the niece of Barrett's wife, and apparently occasionally stayed at Barrett's house.

3. At oral argument, Barrett raised for the first time the issue of voluntary intoxication as a defense to the charge of attempting to commit a sexual act, which he claims requires specific intent. As this issue was not raised in the District Court, it is not properly before us. Although we will "consider issues ... raised for the first time on appeal if we conclude that denying review will violate a defendant's substantial rights," *United States v. Justice,* 877 F.2d 664, 670 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989), this issue does not "fall[ ] within that narrow exception," *Jones v. Arkansas,* 929 F.2d 375, 380 (8th Cir. 1991), and so we decline to address it.

*United States v. Schmidt,* 922 F.2d 1365, 1368 (8th Cir.1991) (quoting *United States v. Springer,* 831 F.2d 781, 784 (8th Cir. 1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988) *and Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)). Based on this standard of review, we conclude that the evidence is sufficient to support the conviction.

The victim testified that on the evening before the assault, she had drunk eight beers and smoked a marijuana cigarette. After arriving at Barrett's house at approximately midnight, she went to sleep in her cousin's bedroom near the back of the house. She testified that she was awakened when her aunt (Barrett's wife) came in, but she went back to sleep after her aunt left the house to drive a drinking companion home. The victim was very tired because of the hour and her previous day's activities. The attack occurred around 2:30 a.m. The victim vaguely remembers someone pulling off her jeans and underwear. Once fully awake, she realized that Barrett was on top of her and she felt his penis inside her vagina. She immediately pushed him off, grabbed her clothes, ran out of the room, put on her clothes, and ran outside to meet her aunt who was just arriving home. In light of this testimony, a rational jury could have found beyond a reasonable doubt that the victim was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act until after the act had been completed.

Barrett argues that the change in the offense he was charged with and the differing versions of the assault the victim gave to law enforcement officials should give rise to a reasonable doubt by a reasonable jury. We disagree. The jury was aware of the slightly differing versions of the assault that the victim gave at different times, and was aware of the change in the charges. The victim testified at trial, and was cross-examined on her various versions

of the assault. It was up to the fact-finder to judge the credibility of the victim, and to believe or reject her testimony. We cannot say that it is unreasonable for a victim of a sexual assault to give slightly different versions of the assault, especially when three of the versions are recounted within hours of the assault.

■ Barrett next contends that the District Court erred in allowing a police officer to testify about a statement made by Barrett's wife shortly after the police arrived at Barrett's house on August 13. According to the police officer, when the police arrived at the scene, Barrett's wife was hollering and crying and was very angry and very upset; she yelled to the officers that "[y]ou guys better find the guy before I kill him." Trial Transcript, vol. I at 100.[4] Barrett argues that the statement was irrelevant and unduly prejudicial.[5] "The trial court has the discretion to determine whether evidence is relevant and will not be reversed absent a clear showing that it has abused its discretion." *United States v. Westbrook,* 896 F.2d 330, 335 (8th Cir. 1990). Similarly, the trial court has considerable discretion in determining whether relevant evidence is unduly prejudicial and on appeal the standard of review is abuse of discretion. *United States v. Bettelyoun,* 892 F.2d 744, 747 (8th Cir.1989). The wife's excited utterance was clearly relevant. In the circumstances of this case we cannot say that the trial court abused its discretion in its weighing of the testimony's relevance against the danger of unfair prejudice and in declining to exclude the testimony. *See* Fed.R.Evid. 403.

■ Barrett further contends that the District Court erred in allowing two law enforcement officials to testify about what the victim told them when they interviewed her shortly after the assault. Barrett argues that the victim changed her story about the attack, first alleging that she was awake before Barrett penetrated her, then later saying that she was awake only

---

4. When the police arrived at Barrett's house, he was hiding in the nearby woods.

5. The District Court admitted the statement under the excited-utterance exception to the hearsay rule, *see* Fed.R.Evid. 803(2), and Barrett does not contest this aspect of the court's ruling.

after penetration had occurred. Barrett ties this change in the victim's story to the prosecutorial decision to seek the superseding indictment. The District Court allowed a police officer to testify about the victim's statements made shortly after the assault, and also allowed an FBI agent to testify on the same subject. This testimony was admitted in under Fed.R.Evid. 801(d)(1)(B), which permits, for purposes of rebutting a charge of recent fabrication or improper influence or motive, testimony regarding the prior consistent statements of a declarant who testifies at the trial and is subject to cross-examination concerning the statements.

Barrett argues, as he did implicitly at trial, that it was only after the prosecutors decided to pursue the charge in the superseding indictment that the victim changed her story to claim that she was unaware of Barrett until he had penetrated her. This is the "express or implied charge against the declarant of recent fabrication or improper influence or motive" referred to in Rule 801(d)(1)(B). The testimony of the law enforcement officers was offered to rebut this charge; they testified that the victim told both of them separately, on the day of the assault, that she was not aware of the assault until after Barrett had penetrated her. In addition, the uncontradicted testimony of the FBI agent is that the nature of the possible charges against Barrett were not discussed with the victim before she made the statements in question. The testimony of the officers, which was consistent with the victim's trial testimony, meets the requirements for the admission of prior consistent statements, *see United States v. Bowman*, 798 F.2d 333, 338 (8th Cir.1986), *cert. denied*, 479 U.S. 1043, 107 S.Ct. 906, 93 L.Ed.2d 856 (1987), and the trial court did not err in admitting this testimony.

We address the next two points of contention together. Barrett argues that the District Court erroneously limited his cross-examination of both the victim and an FBI agent concerning the pre-trial interview that occurred on August 2, 1990. Five days after this interview, the superseding indictment was obtained from a grand jury. Barrett implies that the victim changed her story about the sexual assault as a result of this meeting; prior to this meeting, says Barrett, the victim remembered being awake when Barrett attacked her, and that Barrett used some force during the attack. As a result of the pre-trial interview, Barrett asserts, the victim changed her story to say that she was not awake until after penetration had occurred. Barrett contends that the District Court erred in not allowing him to cross-examine more fully the witness and the FBI agent about the pre-trial interview. Barrett claims that a more extensive cross-examination might reveal that the victim changed her story only at the urging of the prosecutor or FBI agent. Barrett also points to the lack of notes taken by the FBI agent at that meeting to indicate that prosecutorial misconduct led the victim to change her story.

We review a trial court's limitation of cross-examination only for abuse of discretion; we will reverse only if "there has been a clear abuse of discretion and a showing of prejudice to the defendant." *United States v. Rubin*, 836 F.2d 1096, 1099 (8th Cir.1988). The limitation on Barrett's right to cross-examination was not an abuse of discretion. The District Court allowed Barrett to ask the victim if she changed her story as a result of the August 2 pre-trial interview; the only limitation was on questioning the victim about the superseding indictment. Barrett cross-examined the victim about the statements she made after the attack; inconsistencies were pointed out, and the victim was asked to explain them. It is within the jury's province to weigh a witness's credibility; the jury was made aware of the various inconsistencies in the victim's numerous statements, and also was aware of the pre-trial interview and the subsequent change in the charges against Barrett. In these circumstances, we cannot say that the District Court abused its discretion by limiting Barrett's cross-examination of the victim in the manner described.

Similarly, the District Court did not abuse its discretion by imposing limitations

on the cross-examination of the FBI agent. After establishing that the agent did not take notes during the August 2 interview, Barrett asked about the reason for the lack of notes. This question was disallowed by the court. Barrett did ascertain through cross-examination that it was the agent's personal decision not to take notes during the interview, that the agent rarely takes notes in a pre-trial interview, and that notes, when taken, are usually disclosed. Again, the jury had in front of it the many statements of the victim, along with the inconsistencies in the statements. The jury was also aware of the pre-trial interview and the subsequent change in the indictment. We are satisfied the District Court did not abuse its discretion by limiting Barrett's cross-examination of the FBI agent.

■ Finally, Barrett contends that the Sentencing Guidelines applicable to his case are inconsistent with the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.* (1988). The Act requires a sentencing court to consider the "history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and to consider alternatives to imprisonment. *See* 18 U.S.C. §§ 3561 & 3562.

The District Court had the benefit of the pre-sentence report on Barrett, which detailed his history and characteristics. This is sufficient to fulfill the mandate of Section 3553(a)(1). As to the availability of probation, while Congress authorized the Sentencing Commission and the courts to make probation available for some crimes, notably Class C felonies (of which Barrett was convicted), it did not require probation to be made available. Accordingly, the Sentencing Guidelines applicable in this case do not contravene the Sentencing Reform Act. *See United States v. Mondello,* 927 F.2d 1463, 1468 (9th Cir.1991) (rejecting the argument that the Sentencing Commission must permit probation for most of the crimes not listed in Section 3561); *United States v. Lueddeke,* 908 F.2d 230, 232–33 (7th Cir.1990) (rejecting the argument that the Guidelines are inconsistent with the enabling language of 28 U.S.C. § 994(j) (1988), which requires the Commission to take into account the appropriateness of probation); *United States v. Ortez,* 902 F.2d 61, 66 (D.C.Cir.1990) ("[T]he Sentencing Guidelines' limitations on the availability of probation as a sentencing option are not inconsistent with the enabling legislation."); *United States v. White,* 869 F.2d 822, 827 (5th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 *and* —— U.S. ——, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989) (the Commission's "wide discretion" is not abused by the Commission's limitation of probation). We conclude that Barrett's attack on his sentence affords him no basis for relief.

### III.

Barrett's conviction and sentence are affirmed.