# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2053

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　*
　　　　　　　　　　　　　　　　*　　Appeal from the United States
　　　v.　　　　　　　　　　　　*　　District Court for the
　　　　　　　　　　　　　　　　*　　District of North Dakota.
Primus James Demery,　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　*

_____

Submitted:  December 14, 2010
Filed:  May 27, 2011

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Primus James Demery was charged in a three-count indictment and convicted by a jury of abusive sexual contact in Indian country, sexual abuse in Indian country, and assault resulting in serious bodily injury in Indian country.  The district court sentenced Demery to a term of 180 months' imprisonment on each of Counts One and Two, and 120 months' imprisonment on Count Three, to be served concurrently.  The court also ordered a term of fifteen years of supervised release on each of Counts One and Two, and three years on Count Three, also to be served concurrently.

Demery appeals his conviction and sentence. We affirm the convictions and the sentences imposed on Counts Two and Three, but vacate the term of imprisonment imposed for Count One and remand for the limited purpose of resentencing on that count.

I.

We recite the facts in the light most favorable to the verdict. Early in the morning on April 18, 2009, Demery, an Indian, was drinking and socializing at his sister's house on the Turtle Mountain Indian Reservation. Demery left by himself sometime before sunrise, and he went to Tia Morin's residence next door. Once inside, he entered Morin's bedroom, where she was sleeping. He touched her breasts and genitals, first over her clothing, and then under her clothing. When Morin opened her eyes and looked at him, he forcefully inserted his fist into her vagina. Demery then left the residence.

Demery's assault caused Morin to bleed uncontrollably. She called her friend Kathy Wilson, and Wilson drove Morin to a hospital. Morin underwent emergency surgery to repair lacerations to her vagina.

A grand jury returned a three-count indictment against Demery. Count One charged abusive sexual contact with a person who was physically incapable of declining participation in, or communicating an unwillingness to engage in, the sexual contact, in violation of 18 U.S.C. §§ 1153 and 2244(a)(2). Count Two charged sexual abuse of a person who was incapable of appraising the nature of the conduct, or who was physically incapable of declining participation in, or communicating an unwillingness to engage in, the sexual act, in violation of 18 U.S.C. §§ 1153 and 2242(a)(A)-(B). Count Three charged assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Following a two-day trial, a jury found Demery guilty on all counts, and the court later imposed sentence.

II.

A.

Demery first challenges the sufficiency of the evidence to support his conviction for sexual abuse. The statute under which Demery was convicted, 18 U.S.C. § 2242(2)(A)-(B), proscribes "engag[ing] in a sexual act with another person" when the other person is "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." The definition of "sexual act" includes "the penetration, however slight, of the . . . genital opening of another by a hand or finger." 18 U.S.C. § 2246(2)(C).

Demery asserts that the government failed to prove that Morin was "incapable," for purposes of § 2242(2)(A)-(B), at the moment of penetration. "We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict, and we will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. McCraney*, 612 F.3d 1057, 1063 (8th Cir. 2010).

Demery asserts that Morin's own testimony shows that she was neither asleep nor intoxicated when he committed the sexual act, and that the government thus failed to prove that she was incapable of declining participation or communicating unwillingness. Morin testified that she was awakened on the morning of the attack by Demery touching her breasts and genitals over her clothing. After she woke up, Demery began touching her under her clothes. She then opened her eyes and looked at Demery, and when she did so, he penetrated her. Morin also testified that although she had been drinking before she went to sleep on the morning of the attack, she did not really feel intoxicated.

We considered an argument similar to Demery's in *United States v. Barrett*, 937 F.2d 1346 (8th Cir. 1991). In that case, the victim testified that she went to sleep around midnight. *Id.* at 1348. She was "very tired because of the hour and her previous day's activities." *Id.* She "vaguely remember[ed] someone pulling off her jeans and underwear," and once she was "fully awake," she realized that the defendant was penetrating her. *Id.* We held that the jury reasonably could have found that the victim, at the time of penetration, was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act. *Id.*

As in *Barrett*, a rational jury could find beyond a reasonable doubt that Demery is guilty of sexual abuse. Morin was sufficiently awake before Demery penetrated her to realize that Demery was touching her and to open her eyes, but this evidence does not foreclose a finding of guilt. Morin testified that the attack "was very fast," and that when she opened her eyes and looked at Demery, she "didn't get to do anything" before he attacked her. The testimony of two other witnesses further supports a finding that Morin was "incapable" when Demery penetrated her. The physician who treated Morin at the hospital testified that Morin said that she awoke to a man penetrating her, and one of Demery's cellmates testified that he overheard Demery admit to penetrating a person named Tia while she was sleeping. Based on this evidence, we conclude that a reasonable jury could find that Morin, like the victim in *Barrett*, was not "fully awake" until after penetration occurred, and that she was therefore incapable of declining participation or communicating unwillingness to engage in the sexual act.

B.

Demery next argues that he is entitled to a new trial because of erroneous evidentiary rulings by the district court. He first contends that the district court erred by admitting testimony of FBI agent Ryan O'Neil about an out-of-court statement made by Alfreda Longie, a witness for the prosecution. Longie, Demery's girlfriend,

testified that while she and Demery were at his sister's house on the morning of the assault, Demery left without saying anything to anyone. The prosecutor asked Longie whether she previously told O'Neil that when Demery left, he said he was going to "Tia's." Longie said she had not made such a statement to O'Neil. The government later called O'Neil, who testified that Longie told him that when Demery left the house, he said "I'm going to Tia's."

Demery's only objection at trial to O'Neil's testimony about Longie's statement was based on hearsay. T. Tr. 255. The evidence was not offered for the truth of the matter asserted, *see* Fed. R. Evid. 801(c), so the hearsay objection was properly overruled. Demery raises a different contention on appeal, so we review it only for plain error. *See United States v. Bell*, 624 F.3d 803, 808 (7th Cir. 2010); Fed. R. Evid. 103(a)(1). To establish plain error, Demery must show an obvious error that affected his substantial rights, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 736 (1993).

Extrinsic evidence of prior inconsistent statements is admissible under Rules 607 and 613(b), subject to a Rule 403 balancing test. *See United States v. Durham*, 470 F.3d 727, 731-32 (8th Cir. 2006). Demery contends that O'Neil's testimony should have been excluded under Federal Rule of Evidence 403, because its probative value was substantially outweighed by the danger of unfair prejudice. The potential for unfair prejudice in this situation is that a jury might misuse evidence of the witness's prior inconsistent out-of-court statement, which is admissible only to impeach the witness's in-court testimony, as substantive evidence of guilt. The balancing test of Rule 403 serves to prevent a party from calling a witness, knowing her to be adverse, simply to admit under the guise of impeachment an out-of-court statement that implicates the defendant. *See United States v. Buffalo*, 358 F.3d 519, 522-23 (8th Cir. 2004).

Despite this concern about potential abuse, however, our court has said that "the government's motive in eliciting testimony is irrelevant," and we conduct the Rule 403 analysis on an objective basis. *United States v. Logan*, 121 F.3d 1172, 1175 (8th Cir. 1997). The probative value of the impeachment evidence in this scenario typically is to raise doubts regarding the truthfulness of *both* the witness's trial testimony and her out-of-court statement, and thereby to suggest that the witness is not a credible person. *Id.*

The district court's decision to admit O'Neil's testimony was not an obvious error under Rule 403. Longie was with Demery shortly before and after the assault on Morin, and she had relevant testimony to give apart from Demery's statement about where he was going when he left the sister's house. In her trial testimony, however, she not only denied that Demery said he was destined for "Tia's" house when he departed, but also said that she observed no blood on Demery's boots or clothing when she saw Demery at home after the assault. Given this account, which supported the defense case, O'Neil's testimony about Longie's prior inconsistent statement had probative value in questioning her credibility. *See Durham*, 470 F.3d at 732. The danger of unfair prejudice might have been lessened by a limiting instruction about the impeachment evidence, but the defense did not request one. The government's reference to O'Neil's testimony in final argument focused on Longie's credibility, including her potential motive for protecting Demery. The record thus does not show that the government abused the opportunity to introduce impeachment evidence regarding Longie's testimony, and we see no plain error warranting relief.

Demery next asserts that the district court abused its discretion by allowing Kathy Wilson to testify that Morin identified Demery as her attacker during the drive to the hospital. The government responds that Wilson's testimony was properly admitted under the excited utterance exception to the hearsay rule, Federal Rule of Evidence 803(2). We review for abuse of discretion. *United States v. Koch*, 625 F.3d 470, 479 (8th Cir. 2010).

Hearsay is not admissible unless there is an applicable exception to the bar on hearsay evidence. Fed. R. Evid. 801(c), 802. Under Rule 803(2), a statement "relating to a startling event or condition and made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an excited utterance. "The rationale of the excited utterance exception is that the stress of nervous excitement or physical shock stills the reflective faculties, thus removing an impediment to truthfulness." *United States v. DeMarce*, 564 F.3d 989, 997 (8th Cir. 2009) (internal quotations omitted). In determining whether a declarant was under the stress of excitement caused by a startling event when she made a statement, "we consider the lapse of time between the startling event and the statement, whether the statement was made in response to an inquiry, the age of the declarant, the physical and mental condition of the declarant, the characteristics of the event, and the subject matter of the statement." *United States v. Wilcox*, 487 F.3d 1163, 1170 (8th Cir. 2007) (internal quotation omitted). "We also examine whether the declarant's stress or excitement was continuous from the time of the event until the time of the statements." *Id.*

Demery contends that Morin was no longer under the stress of excitement caused by the attack when she told Wilson that Demery was her attacker. He argues that Morin's initial refusal to identify her attacker, her explanation to Wilson that she would not do so because she was afraid for her life, and the fact that she identified Demery only in response to Wilson's repeated questioning show that she had time and ability to reflect. He also points to the facts that Morin is an adult, and that the disputed statement was made thirty to sixty minutes after the attack. The government responds that in light of the violent sexual assault endured by Morin just as she was waking up, the serious injuries Morin suffered, Morin's testimony that she was in pain and in shock after the attack, and Wilson's testimony that Morin was "freaking out" during the drive to the hospital, the district court properly admitted Wilson's testimony.

Without resolving the evidentiary dispute, we conclude that any error was harmless, because Wilson's testimony was largely cumulative of other evidence. Morin testified that on the way to the hospital, she told Wilson that Demery was her attacker. Morin's sister Shasheen and her friend Isaiah Aiken both testified that before Morin left for the hospital, she told them that Demery had raped her. This evidence is unchallenged on appeal. We think it unlikely that the addition of Wilson as a third person who heard Morin inculpate Demery had a substantial effect on the jury's verdict. Accordingly, the court's ruling is not a basis for reversal. *See Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946); *United States v. Marrowbone*, 211 F.3d 452, 455-56 (8th Cir. 2000).

C.

Demery also raises three challenges to his sentence. Demery first argues that the district court erred by imposing a sentence longer than the statutory maximum on Demery's conviction for abusive sexual contact. The district court sentenced Demery to 15 years' imprisonment on that conviction, but the government concedes that the statutory maximum term is 3 years. *See* 18 U.S.C. § 2244(a)(2). We therefore vacate the sentence on Count One.

Demery next argues that his sentence violates the Double Jeopardy Clause of the Fifth Amendment, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause forbids both successive prosecutions and successive punishments, *United States v. Dixon*, 509 U.S. 688, 696 (1993), and a court may not alter the terms of a sentence once the defendant has begun to serve it. *Johnson v. Mabry*, 602 F.2d 167, 170 (8th Cir. 1979). Demery claims that the district court's written judgment, which issued after Demery began serving his sentence, includes conditions of supervised release that the court did not mention in the oral pronouncement of Demery's

sentence, and that the written judgment thus altered his sentence in violation of the Double Jeopardy Clause.

We conclude that the written judgment is not inconsistent with the oral pronouncement of Demery's sentence. The disputed supervised release conditions are thirteen "standard" conditions listed in USSG § 5D1.3(c). At sentencing, the district court told Demery that while on supervised release, he will "be required to follow what are called standard conditions of supervision." S. Tr. 36. The court then provided a general overview of the standard conditions, telling Demery that "[b]asically those standard conditions of supervision require that you live a law-abiding lifestyle," and the court listed some of the specific requirements included in the standard conditions. S. Tr. 36-37. The court also told Demery that "all of those standard conditions of supervision are spelled out in the judgment that I'll sign . . . probably tomorrow, at the latest," and that Demery would receive a copy of it. S. Tr. 37-38. Demery never objected to the district court's explanation of the standard conditions, never asked the district court for clarification or elaboration, and never objected to the standard conditions being "spelled out" in the written judgment to issue the next day. In our view, the detailed statement of the standard conditions included in the written judgment did not alter the court's oral pronouncement that it had imposed the standard conditions. Demery's sentence thus does not violate the Double Jeopardy Clause. *See United States v. Little Bear*, No. 10-1782, 2011 WL 668115, at *2 (8th Cir. Feb. 25, 2011) (per curiam) (unpublished).

Finally, Demery challenges one of the conditions of his supervised release. At sentencing, the district court announced that while on supervised release, Demery would be required to "participate in any form of psychological, psychiatric counseling or sex offender treatment programming and counseling that the probation officer feels is reasonable and warranted." The written judgment provided as follows: "The Defendant shall participate in psychological/psychiatric counseling and/or a sex

offender program, which may include inpatient treatment as approved by the probation officer."

Demery contends that the district court improperly delegated a judicial function to the probation officer by leaving to that officer's discretion whether Demery must undergo counseling. We have considered several cases in which a district court has delegated some measure of authority to a probation officer to make decisions about a defendant's mental health counseling during a term of supervised release. Our decisions in this area establish that as long as the district court does not indicate affirmatively that it has disclaimed ultimate authority over the condition of supervised release, limited delegation to a probation officer is permissible. "Implicit in these decisions is an assumption that . . . the probation officer will consult with the court about the matter or, at a minimum, the court will entertain a motion from the defendant for reconsideration of the probation officer's initial decision." *United States v. Wynn*, 553 F.3d 1114, 1120 (8th Cir. 2009). Unlike in *United States v. Kent*, 209 F.3d 1073 (8th Cir. 2000), where the district court's statements made it "entirely possible that Kent's probation officer, as opposed to the court, would retain and exercise ultimate responsibility over the situation," *id.* at 1079, the record here does not affirmatively suggest abdication of judicial responsibility. We therefore reject Demery's challenge to the condition of supervised release.

\*       \*       \*

The judgment of the district court is affirmed in all respects except for the sentence imposed with respect to Count One. The sentence on Count One is vacated, and the case is remanded for the limited purpose of resentencing on that count.

_____