MURPHY, Circuit Judge,
with whom
BYE, COLLOTON, GRUENDER, and BENTON, Circuit Judges, join, concurring in part and dissenting in part.
From the time of the enactment of 18 U.S.C. § 2242(2) in 1986, until and after the panel opinion in United States v. Rouillard, 701 F.3d 861 (8th Cir.2012), our court has consistently accepted jury instructions which required proof both that the defendant knowingly engaged in a sexual act and that the victim was an incapacitated person. When this case was in the district court, Judge Karen Schreier heard arguments from opposing counsel before deciding to give the jury that standard instruction. A review of our cases suggests that juries have had no trouble applying that instruction and reaching a fair result: nearly half of the defendants have been acquitted. I agree with the majority that the evidence is sufficient to support Bruguier’s burglary conviction, but I respectfully dissent from its misinterpretation of the “knowingly” element in § 2242(2) which is contrary to the statute’s plain text and misconstrues the legislative record. ■
I.
Bruguier was charged with two counts of aggravated sexual abuse and one count of attempted aggravated sexual abuse, 18 U.S.C. § 2241(a), sexual abuse of an incapacitated person, 18 U.S.C. § 2242(2), sexual abuse of a minor, 18 U.S.C. § 2243(a), and burglary, S.D. Codified Laws § 22-32-1. The jury found Bruguier guilty of aggravated sexual abuse, sexual abuse of an incapacitated person, sexual abuse of a minor, and burglary. It acquitted him of the other charges.
Bruguier’s conviction under § 2242(2) was based on his rape of Crystal Strieker in January 2011. Sometime in the early morning hours Crystal returned home heavily intoxicated after drinking at several places. While she was talking with the *775 sister of her boyfriend Mike Miller, Bru-guier arrived at the house. Later, after Mike’s sister left the room for “a couple minutes,” she heard a “big boom.” She rushed back to the living room where she found Crystal lying motionless on the floor with Bruguier “on top of her, pulling her pants down.” She yelled for Mike, who came from the bedroom and saw Crystal “laying like she was knocked out.” Mike testified at trial that Crystal’s head was “slanted against the vent” and that her eyes were “open, but they were glossy red.” Mike also observed that Crystal had semen between her legs and that Bruguier’s penis was erect. He had to shake Crystal to awaken her. A sexual assault exam of Crystal revealed vaginal bruising and semen matching Bruguier’s DNA. Crystal testified that the rape made her feel “a lot of shame,” and shortly afterward she was prescribed anxiety and sleeping medications and began seeing a sexual assault counselor.
The district court instructed the jury that to convict Bruguier of sexual assault of an incapacitated person under § 2242(2), the government had to prove beyond a reasonable doubt that “Bruguier did knowingly cause or attempt to cause Crystal Strieker to engage in a sexual act” and that Crystal ,“was physically incapable of declining participation in and communicating unwillingness to engage in that sexual act.” After deliberating the jury convicted Bruguier of violating § 2242(2). Since the district court’s jury instructions correctly stated the legal standard and elements required to convict Bruguier under § 2242(2), his conviction should be affirmed.
II.
In. interpreting a statute, we look first to its text. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004) (plurality, opinion). Section 2242(2) states that:
Whoever . . . knowingly' — ■
(2) engages in a sexual act with another person if that other person is—
(A) incapable of appraising the nature of the conduct; or
(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.
§ 2242(2) (emphasis added).
A.
Section § 2242(2) is composed of. the adverb “knowingly” separated by a dash from two active verbs describing the defendant’s acts, which are in turn separated by a dash from two subsidiary clauses which contain adjectives describing the victim’s status. The Supreme Court has instructed that criminal statutes of this construction are “most natural[ly]” read such that “knowingly” modifies only the surrounding active verbs and not the separate subsidiary clauses. United States v. X-Citement Video, Inc., 513 U.S. 64, 68, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).
In X-Citement Video, the Supreme Court considered a structurally similar statute, 18 U.S.C. § 2252, which criminalizes the distribution of child pornography. 513 U.S. at 67-68, 115 S.Ct. 464. Section 2252 states that any person shall be subject to punishment “who—
(1) knowingly transports ... any visual depiction, if—
*776 (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct.”
§ 2252(a) (emphasis added). The Court concluded that the “most natural grammatical reading” of § 2252 was that “knowingly” in the introductory clause “modifies only' the surrounding verbs” such ■ as “transports” and not the other elements of the criminalized conduct. 513 U.S. at 68, 115 S.Ct. 464. It reasoned that the knowledge requirement and other elements of § 2252 are “set forth in independent clauses separated by interruptive punctuation.” Id.
The Court’s statutory reading in X-Citement Video is instructive in considering § 2242(2). Like § 2252, the statute in that case, the statute at issue here contains a “knowingly” requirement in an introductory clause set apart by “interruptive punctuation” from the contested elements of the offense. See id. Section 2242 makes it a crime to “knowingly — (2) engage! ] in a sexual act with another person if that person is — ” incapable of consent. The requirement of “knowingly” is thus set apart by two sets of interruptive punctuation from the distinct element relating to the victim’s incapacity. Thus, “knowingly” in § 2242(2) cannot be read to modify “physically incapable of declining participation in, or communicating unwillingness to engage in” a sexual act. § 2242(2). That is because in this statutory arrangement “knowingly” belongs to and modifies the words “engages” and “attempts.”
While asserting that “knowingly” applies to the victim’s incapacity in § 2242(2), the concurrence cites Justice Scalia’s opinion for the Court in United States v. Williams, 553 U.S. 285, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), for his observation that “knowingly introduces the challenged provision itself.” Id. at 294, 128 S.Ct. 1830. The best answer to the concurrence comes from Justice Scalia himself. Williams was “not a case where grammar or structure enable[d] the challenged provision or some of its parts to be read apart from the ‘knowingly’ requirement.” Id. at 294, 128 S.Ct. 1830. In particular, there was no conditional “if’ clause, as in § 2242(2) (“if that other person is ... physically incapable of declining participation”), or as in this example from X-Citement Video: “Anyone who knowingly double-parks will be subject to a $200 fine if that conduct occurs during the b:30-to-6:30 rush hour.” 513 U.S. at 81, 115 S.Ct. 464 (Scalia, J., dissenting) (emphasis added).
Even though “knowingly” introduced the parking rule, Justice Scalia explained that “[i]t could not be clearer that the scienter requirement applies only to the double-parking, and not to the time of day.” Id. at 82, 115 S.Ct. 464. The Court acknowledged that Justice Scalia’s dissent favored the “most grammatical reading” of the statute (and presumably of the parking rule). Id. at 70, 115 S.Ct. 464 (opinion of the Court). Williams thus does not win the day for Bruguier. That is because the grammar and structure of § 2242(2) do not make the victim’s capacity subject to the “knowingly” requirement.
The language in § 2242(2) mirrors the contested language in X-Citement Video in a second respect. In both, the language in the principal paragraph refers to the criminal actor (“knowingly engages” and “knowingly transports”). The subsidiary clauses, by contrast, refer to the victim (“is incapable” and “use of a minor”). The natural reading of § 2242(2) is that the adverb “ ‘knowingly’ modifies only the surrounding verbs” of “engages” and “attempts,” X-Citement Video, 513 U.S. at 68, 115 S.Ct. 464, but it does not apply to the *777 separate subsections describing the victim’s condition.
The Supreme Court’s guidance leaves little question as to the most natural grammatical reading of § 2242(2), which is that “knowingly” does not extend to the conditional phrases regarding the victim’s incapacitated status. The question before us, then, is whether we must reject the natural grammatical reading of § 2242(2) and add an element of the offense that is not indicated by the congressional text.
B.
The Supreme Court has identified several situations in which it is appropriate to depart from the most natural grammatical reading of a statute, but none are applicable here. Rather, the Court’s guidance and “contextual” considerations, Flores-Figueroa v. United States, 556 U.S. 646, 652, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009), make clear that the reasons offered by the majority for inserting an additional extratextual requirement into § 2242(2) are neither applicable nor appropriate in this case.
In X-Citement Video, the Supreme Court departed from the grammatical reading of the statute based on three concerns. First, the Court noted that any reading which omitted a knowledge requirement would create the absurd result of rendering innocent parties (such as a new resident of an apartment who returns unopened mail or a Federal Express courier who delivers a box containing film) criminally liable for the distribution of child pornography. 513 U.S. at 69-70, 115 S.Ct. 464. Second, the statute as written would have reached nonobscene, sexually explicit materials involving persons over the age of 17, which are protected by the First Amendment. Id. at 71-73, 115 S.Ct. 464. Neither concern exists with respect to § 2242(2).
The third rationale the Court acknowledged in X-Citement Video was that it had in other instances “interpreted] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them.” Id. at 70, 115 S.Ct. 464. In making this observation, however, the Court conspicuously noted that a presumption of adding a mens rea requirement does not apply where “the perpetrator confronts the underage victim personally and may reasonably be required to ascertain that victim’s age.” Id. at 72 n. 2, 115 S.Ct. 464. The Court therefore indicated that its conclusion would not apply to producers of child pornography because they are “more conveniently able to ascertain the age of performers,” and “[i]t thus makes sense to impose the risk of error on producers.” Id. at 76 n. 5, 115 S.Ct. 464.
The Court’s guidance counsels strongly in favor of adopting the plain grammatical reading in the case before us. That is because the reasons for declining to apply a presumption of scienter in cases of underage sex partners or underage performers are equally pertinent here. It “makes sense to impose the risk of error” on aggressors who engage in sexual acts with incapacitated victims because the perpetrator confronts the victim personally and may reasonably be required to ascertain that victim’s capacity or incapacity. See id. at 72 n. 2, 76 n. 5, 115 S.Ct. 464. For this reason the Court has long recognized an exception from traditional mens rea requirements for “sex offenses, such as rape,” in which the victim’s status rather than the defendant’s knowledge is determinative. Morissette v. United States, 342 U.S. 246, 251 n. 8, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Congress, through its statutory language,, expressly adopted that policy choice in § 2242(2). There is no reason *778 for this court to add an element of knowledge that is not present in the text.
The majority also misconstrues Flores-Figueroa by reading it to create a presumption that a mens rea requirement applies to all elements of a criminal offense. In that case, the Court “relied heavily” on its earlier decision in X-Citement Video. Ante at 758 n. 3. Read together, the two cases instruct that “courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element,” Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886 (emphasis added), but will not do so in cases of sexual abuse when the perpetrator is “conveniently able to ascertain” the victim’s status, X-Citement Video, 513 U.S. at 76 n. 5, 115 S.Ct. 464. As Justice Alito predicted, the majority erroneously reads Flores-Figueroa to “adopt[ ] an overly rigid rule of statutory construction” in which “the mens rea of a federal criminal statute nearly always applies to every element of the offense.” Flores-Figueroa, 556 U.S. at 659, 129 S.Ct. 1886 (Alito, J., concurring). A more holistic review of the Court’s guidance on the issue instead supports the plain grammatical reading of § 2242(2).
Flores-Figueroa provides yet another reason for skepticism about the majority’s reasoning. In that case, the defendant had been charged with identity theft. The government argued that applying a mens rea requirement to all elements of the offense would create “difficulty in many circumstances of proving beyond a reasonable doubt that a defendant has the necessary knowledge.” 556 U.S. at 655, 129 S.Ct. 1886. Although the Court recognized that this argument had “great[] practical importance” it found it “[injsuffi-cient ... to turn the tide in the Government’s favor” in that particular context because in identity theft cases “intent is generally not difficult to prove,” and “concerns about practical enforceability [were] insufficient to outweigh the clarity of the text.” Id. at 656, 129 S.Ct. 1886. Unlike in cases of identity theft, almost all of the sexual assault cases which have been brought under § 2242(2) arise from abuse of alcohol or drugs in situations where intent may be difficult to establish. Concerns about practical enforceability therefore reinforce the natural grammatical reading of § 2242(2) that knowledge of incapacity is not an element of the offense.
The type of case now before us has not allowed the government easily to convict defendants. In the past ten years, the district courts in our circuit have conducted twenty nine trials in which defendants were charged under § 2242(2) and the jury instructed that the “knowingly” requirement applied only to the defendant’s engagement in the sexual act and not to the victim’s incapacity. Nevertheless, nearly half of the defendants were acquitted of the charges under § 2242(2) (thirteen out of twenty nine).
The concurring opinion also attempts to deflect from the natural grammatical reading of § 2242(2) by suggesting it is an outlier among sexual abuse statutes, asserting that no state’s law in this circuit with the possible exception of Iowa Code § 709.1(2) imposes what the concurrence calls “strict liability.” Ante, at 772-73 & n. 14. The concurrence’s own survey demonstrates however that the majority’s addition of an actual knowledge element into § 2242(2) creates the more problematic anomaly. The states in this circuit as well as the Uniform Code of Military Justice impose liability if a sexual aggressor reasonably should have known that the victim was incapacitated, even if the prosecution cannot prove actual knowledge. See 10 U.S.C. § 920(b)(b)(3); Ark.Code. § 5-14-102(e); Minn.Stat. § 609.345, subd. 1(d); *779 Mo.Rev.Stat. § 556.061(5)(b); Neb.Rev. Stat. § 28-319(l)(b); N.D. Cent.Code § 12.1-20-03(l)(c), (e); State v. Jones, 804 N.W.2d 409, 414 (S.D.2011). That several jurisdictions have adopted a middle ground position requiring proof of constructive knowledge lends no support to the majority’s effort to read a heightened actual knowledge requirement into the congressional language of § 2242(2), with the result that a defendant may be acquitted even when there is proof beyond a reasonable doubt that he reasonably should have known that the victim was incapacitated. No one contends that Congress occupied the middle ground in § 2242(2). As between the two interpretations advanced by the parties, the better view is that Congress opted to place the risk of error about incapacity on the sexual aggressor.
In sum, the correct and most natural grammatical reading of § 2242(2) does not apply any knowledge requirement to the victim’s incapacity, and the. Supreme Court’s guidance as to when a mens rea requirement must be inserted into a statute’s text makes clear that § 2242(2) is not such a statute. See Flores-Figueroa, 556 U.S. at 652-58, 129 S.Ct. 1886; X-Citement Video, 513 U.S. at 70-76, 115 S.Ct. 464.
III.
The legislative history also shows that the “knowingly” requirement in § 2242(2) was not intended to apply to the defendant’s awareness of the victim’s incapacity. Flores-Figueroa makes clear that the “context” and the “background circumstances” of a governing statute must be studied in interpreting it. 556 U.S. at 652, 129 S.Ct. 1886.
A.
Section 2242 was passed into law as part of the Sexual Abuse Act of 1986, which also enacted §§ 2241, 2243, 2244, and 2245. The majority places significant weight on an intratextual comparison of three of those statutes. Such a method, however, is only appropriate when “Congress included particular language in one section of a statute but omits it in another section of the same Act.” Rodriguez v. United States, 480 U.S. 522, 525, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam) (citation omitted). Statutory rape, which is the crime defined in §§ 2241(c) and 2243(a), has long been recognized in our country as not requiring any proof of scienter with respect to the victim’s age. See United States v. Ransom, 942 F.2d 775, 776-78 (10th Cir.1991). Nothing in the legislative record suggests that Congress ever contemplated that its new statutory rape statutes, §§ 2241(c) and 2243(a), would contain any different mens rea requirement.
By contrast, the legislative record of § 2242(2) shows that Congress at one point did contemplate imposing a mens rea requirement on the perpetrator with respect to the victim’s incapacity. It later modified the statute to make it a strict liability crime, however. As initially proposed in the 98th Congress, § 2242 contained language which would have criminalized
knowingly engaging] in a sexual act with another person if such other person is known by the offender to be—
(1) incapable of appraising the nature of the conduct; or
(2) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act[.]
Sexual Assault Act of 1984, H.R. 4876, 98th Cong. § 2 (1984) (emphasis added).
Revisions were then made to the text of § 2242 before it was presented to the 99th *780 Congress two years later. In particular, it was decided that the phrase “known by the offender to be” should be deleted. See Sexual Abuse Act of 1986, H.R. 4745, 99th Cong. § 2 (1986). The 99th Congress passed the revised bill, and the final version of § 2242 omitted any reference to the defendant’s knowledge of the victim’s incapacity. Congress’s decision to omit the initially suggested knowledge requirement is strong evidence that § 2242 was intended to focus on whether the victim was actually incapacitated rather than the defendant’s perception. See Doe v. Chao, 540 U.S. 614, 623, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004). Such a focus appropriately placed responsibility on the perpetrator to ascertain the victim’s capacity to consent.
Although the Supreme Court has said that the deletion of terms from a bill “is fairly seen” as a “deliberate elimination” of the original proposition, id., the concurring opinion finds the revisions meaningless here. In support it cites drafting contentions that merely refer a reader back to the “language” of the statute (which includes grammar and structure), and even the absence of punctuation in ambiguous hearing testimony from a Justice Department official. Ante, at 770, 771 & n. 11. But the concurrence has no answer for the stark change in the testimony of the principal sponsor of the original bill between 1984 and 1986. In 1984, when the bill included the phrase “known by the offender to be,” Representative Hoyer explained that “[s]exual assault involves engaging in a sexual act with persons known by the offender to be incapable of appraising the nature of such conduct.” Federal Rape Law Reform: Hearings Before the Sub-comm. on Criminal Justice of the H. Comm, on the Judiciary, 98th Cong. 80 (1984) (emphasis added).
In 1986, after “known by the offender” was stricken from the bill, Representative Hoyer explained the meaning quite differently as having no knowledge requirement for incapacity: “Sexual abuse involves engaging in a sexual act with persons incapable of appraising the nature of such conduct and those who are physically incapable of declining participation in or communicating unwillingness to engage in the sexual act.” Sexual Abuse Act of 1986: Hearing Before the Subcomm. on Criminal Justice of the H. Comm, on the Judiciary, 99th Cong. 15 (1986) (emphasis added). If the concurrence were right that “format, conventions, and techniques” meant that the drafting change had no substantive effect, then there would have been no reason for Representative Hoyer to alter his statement between 1984 and 1986. That in 1986 he omitted the phrase “known by the offender to be” is telling evidence that the principal sponsor of the legislation understood that § 2242(2) as enacted placed the risk'of error about a victim’s incapacity on the sexual aggressor.
Moreover, although the majority emphasizes the similarities between §§ 2241(c), 2242(2), and 2243(a), see ante at 759, the statutes as enacted differ in ways critical to our analysis. In § 2241(c), the “knowingly” element would apply to the age of the victim as a grammatical matter since no independent clauses or interruptive punctuation marks indicate otherwise. It was therefore necessary for Congress to add § 2241(d) to eliminate a “knowingly” element otherwise prescribed by the text. Similarly in § 2243, Congress added in subsection (c) an affirmative defense concerning the defendant’s knowledge, creating ambiguity as to the mens rea required by § 2243(a). It is thus logical that Congress added § 2243(d) to clarify the state of mind proof requirement in subsection (a). In § 2242, by comparison, Congress *781 had no reason to add a new subsection because the text and grammar of § 2242(2) already make clear that the knowledge requirement does not apply to a victim’s incapacity.
The divergent drafting histories and differing structures of §§ 2241(c), 2242(2), and 2243(a) significantly limit the utility of the majority’s intratextual analysis. In such circumstances the majority’s assumption that the statutes should be read strictly in parallel results in a reading that is “too clever by half — ... conjuring up patterns that were not specifically intended and that are upon deep reflection not truly sound.” Akhil Reed Amar, Intratextualism, 112 Harv. L.Rev. 747, 799 (1999).
B.
The majority’s reading of § 2242(2) is equally inconsistent with the policies identified in the principal legislative report concerning the Sexual Abuse Act of 1986. See generally Samantar v. Yousuf, 560 U.S. 305, 130 S.Ct. 2278, 2287 n. 9, 176 L.Ed.2d 1047 (2010). An apparent congressional purpose in enacting that legislation was to “modernize and reform Federal rape statutes,” H.R.Rep. No. 99-594, at 6 (1986), and to “bring[] [them] into line with modern perceptions of woman’s place in our society,” id. at 13. Critics thought existing rape law improperly focused on the victim’s characteristics rather than the assailant’s actions, and proponents of the 1986 Act accordingly moved away from a victim focus and instead placed “the focus of a trial ... upon the conduct- of the defendant.” Id. at 11.
The congressional hearing record in connection with the enactment of § 2242 shows that legislators were informed of the need to deter and punish serious sexual offenses on Indian reservations. See Sexual Abuse Act of 1986; Hearing Before the Subcomm. on Criminal Justice of the H. Comm, on the Judiciary, 99th Cong. 47-49 (1986) (statement of the Ass’n on Am. Indian Affairs, Inc.). The Department of Justice has observed that one in three American Indian women has been raped or experienced an attempted rape, nearly twice the national average. Patricia Tja-den & Nancy Thoennes, Full Report of the Prevalence, Incidence, and Consequences of Violence Against Women, at 22 (2000), available at http://www.ncjrs.gov/pdffilesl/ nyV183781.pdf; see also United States v. Deegan, 605 F.3d 625, 663 (8th Cir.2010) (Bright, J., dissenting). A review of our caseload shows that sexual assault in the specific circumstances described in § 2242(2) remains a significant problem on Indian reservations. During the past ten years, more than 100 individuals have been convicted of or pled guilty to violating § 2242(2) in the district courts of the Eighth Circuit, and we have considered appeals from at least fourteen such defendants.[18] While most of the victims are women, men have not been exempt from such sexual assaults. See, e.g., Betone, 636 F.3d at 386-87.
Of course not all § 2242(2) offenses occur on Indian reservations. United States v. Warren, 700 F.3d 528 (D.C.Cir.2012), for example, involved a CIA official stationed *782 in Algeria charged under § 2242(2) for sexually assaulting a married- Muslim woman. Id. at 529-30. The victim had delayed reporting the incident “[d]ue to her religion and Algerian culture,” but she subsequently informed another U.S. official that the defendant had “served her adulterated alcoholic drinks that caused her to pass in and out of consciousness” and then “moved her to his bed, removed all of her clothing and had sexual contact” with her. Id. at 530. A subsequent investigation revealed that the defendant had previously drugged and sexually abused another Algerian Muslim woman, and a search of his home revealed child pornography, Valium, and Xanax. Id. Other sites of sexual assaults charged under § 2242(2) include military vessels, United States v. Williams, 89 F.3d 165, 166 (4th Cir.1996), and the special aircraft jurisdiction of the United States, United States v. Jahagirdar, 466 F.3d 149, 150-51 (1st Cir.2006).
In this case the evidence shows that after Bruguier raped Crystal, she was found knocked onto the floor, “not moving or speaking” with her eyes closed; when they opened, they were “glossy red.” Ante at 756. The congressional record related to § 2242(2) includes the purposes to “modernize” rape law to keep with changing views about a “woman’s place in our society,” H.R.Rep. No. 99-594, at 6, 13, and to focus rape law upon the conduct of the aggressor, id. at 11. The majority’s opinion instead removes the responsibility from. a sexual actor to confirm that the other party is not “incapable of appraising the nature of the conduct” or “physically incapable of declining participation in” the sexual act. 18 U.S.C. § 2242(2).
IV.
Reading a knowledge requirement into § 2242(2) with respect to the victim’s incapacity drastically departs from a longstanding assumption in our case law applying the statute. We have previously considered at least fourteen appeals from defendants convicted of violating § 2242(2), see supra at 781 n. 18, and have always applied the knowledge requirement only to the rapist’s awareness of his sexual act until United States v. Rouillard, 701 F.3d 861 (8th Cir.2012).
The anomalous nature of the Rouillard decision is evidenced by an opinion filed only two months later. United States v. Villarreal, 707 F.3d 942 (8th Cir.2013), affirmed a conviction for sexual abuse under § 2242(2) after concluding that the evidence was sufficient to support a finding of guilt on each element of the offense. Id. at 958-61. The court recited that “to convict Villarreal of sexual abuse” under § 2242(2), the government was required to prove that
(1) ... Villarreal knowingly engaged in a or attempted to engage in a sexual act with [the victim]; (2) at the time of the offense, [the victim] was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act; (3) Villarreal is an Indian person; and (4) the offense took place in Indian country.
Id. at 959 (emphasis added); see also United States v. Smith, 606 F.3d 1270, 1281 (10th Cir.2010). The knowledge requirement was linked to engaging in the sexual act itself, not to the incapacity of the victim. As the court observed, our cases “have held that performing a sexual act upon a person who is sleeping meets the requirements of § 2242(2)(B).” Villarreal, 707 F.3d at 959 (quoting United States v. Lowry, 595 F.3d 863, 866 (8th Cir.2010)).
The instruction given in Villarreal was consistent with instructions given in nu *783 merous cases over the years. For example, in United States v. Betone, we affirmed a conviction under § 2242(2) after concluding that the victim’s testimony that the defendant “began fellating him while he was asleep ... alone established] the elements” of the offense. 636 F.3d at 387. We have similarly concluded that a reasonable jury could find “that a person who is asleep when a sexual act begins is physically unable to decline participation in that act,” and such evidence is thus sufficient to convict the assailant under § 2242(2). Wilcox, 487 F.3d at 1169. Similarly, evidence that the victim “had drunk eight beers,” “smoked a marijuana cigarette,” and “was very tired” was viewed as sufficient for “a rational jury [to find] beyond a reasonable doubt that the victim was physically incapable of declining participation in, or communicating unwillingness to engage in, the sexual act.” United States v. Barrett, 937 F.2d 1346, 1348 (8th Cir.1991).
During the past ten years, the district courts of the Eighth Circuit have conducted thirty two trials in which defendants were charged with violating § 2242(2). In twenty nine of those trials, the jury instructions put the knowledge requirement on the perpetrator’s awareness of the physical sexual act, and not knowledge of the victim’s incapacity. While the issue may not have been joined in all of these cases, it is noteworthy that the courts have applied the natural grammatical reading of § 2242(2). The majority claims it would be “novel” for this accepted understanding of § 2242(2) to inform our analysis, ante, at 762, but the Supreme Court long has given “much weight” to decisions in which contested legal points “neither occurred to the bar or the bench,” United States v. Ross, 456 U.S. 798, 819, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (quoting Bank of the United States v. Deveaux, 9 U.S. (5 Cranch) 61, 88, 3 L.Ed. 38 (1809) (Marshall, C.J.)), since this absence of argument illuminates the professions understanding” of the law, id.
After carefully reviewing the conflicting arguments presented to it about the proper interpretation of § 2242(2), the district court gave our circuit’s standard instruction. I respectfully suggest that the majority’s departure from that standard instruction is unsupported by the statutory text or by the statute’s “background circumstances.” Flores-Figueroa, 556 U.S. at 652, 129 S.Ct. 1886. Rather, a close examination of the statutory text and of the congressional concerns leading to its enactment reinforce the correctness of both the district court’s jury instruction and our longstanding understanding that § 2242(2) does not require the government to prove that the defendant knew that his victim was incapacitated, but only that the victim was in fact incapacitated, placing the responsibility where it naturally belongs. For all these reasons I dissent.-

. United States v. Chasing Hawk, No. 12-1193 (8th Cir. submitted Oct. 19, 2012); United States v. Villarreal, 707 F.3d 942 (8th Cir.2013); United States v. Bruguier, 703 F.3d 393 (8th Cir.2012); United States v. Rouillard, 701 F.3d 861 (8th Cir.2012); United States v. Demery, 674 F.3d 776 (8th Cir.2011); United States v. Betone, 636 F.3d 384 (8th Cir.2011); United States v. Knox, 634 F.3d 461 (8th Cir.2011); United States v. Hawkman, 363 Fed.Appx. 417 (8th Cir.2010) (unpublished per curiam); United States v. Papakee, 573 F.3d 569 (8th Cir.2009); United States v. Wilcox, 487 F.3d 1163 (8th Cir.2007); United States v. Thundershield, 474 F.3d 503 (8th Cir.2007).