# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-1514

———————

United States of America,

        Appellee,

v.

Ronald R. Lowry,

        Appellant.

\*
\*
\*
\*    Appeal from the United States
\*    District Court for the
\*    Eastern District of Arkansas.
\*
\*
\*

———————

Submitted: December 14, 2009
Filed: February 23, 2010

———————

Before WOLLMAN, RILEY, and MELLOY, Circuit Judges.

———————

MELLOY, Circuit Judge.

Appellant Ronald R. Lowry pleaded guilty to failing to register as a sex offender in violation of 18 U.S.C. § 2250. The district court[1] sentenced him in accordance with the Tier III sex-offender provision of U.S. Sentencing Guideline § 2A3.5(a)(1). The statutory range of imprisonment was zero to ten years, the adjusted Guidelines range was thirty-three to forty-one months, and the district court imposed an above-range sentence of forty-eight months. The district court also imposed a thirty-year term of supervised release to follow Lowry's incarceration.

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

This term of supervised release was within the applicable statutory range of five years to life.

Lowry appeals, characterizing use of the Tier III sex offender provision, rather than the Tier I provision, as a significant procedural error. He also argues that the district court abused its discretion in sentencing him above the Guidelines range and that the thirty-year term of supervised release is substantively unreasonable. We affirm.

I.    Background

On February 16, 1995, when Lowry was twenty-four years old, he had intercourse with a sleeping minor who was at least thirteen but younger than seventeen. In addition, he digitally penetrated the vagina of a second, similarly aged minor who also was sleeping. Based on these acts, an Illinois court convicted him of aggravated sexual assault and sentenced him to eight years' imprisonment with a requirement that he register as a sex offender for ten years. After he was released from prison, he was convicted of three sex-offender violations: in 2002 and 2006 he was convicted for violating registration requirements, and in 2004 he was convicted for being unlawfully present in a school zone. In addition, in 2004 at the age of thirty-three, he pleaded guilty to two counts of animal torture.

In 2008, authorities discovered Lowry living in Arkansas where he was not registered as a sex offender. Based on his Illinois conviction for aggravated sexual assault, the Sex Offender Registration and Notification Act ("SORNA"), codified at 42 U.S.C. § 16901 et seq., required his registration in Arkansas. His failure to register in Arkansas served as the basis for his present federal conviction.

II.    Discussion

Lowry's allegations of procedural error in sentencing involve solely questions of law, namely, whether and how the offense level provisions of U.S.S.G. § 2A3.5(a) should apply to state sex offenders whose underlying offenses and registration requirements arose prior to the enactment of SORNA.  We review these legal questions de novo.  See United States v. Weems, 517 F.3d 1027, 1030 (8th Cir. 2008). We review his challenges to the substantive reasonableness of his overall sentence—the terms of incarceration and supervised release—only for abuse of discretion.  See United States v. Miller, 484 F.3d 968, 971 (8th Cir. 2007).

Guideline Section 2A3.5(a) defines the base offense level for violations of 18 U.S.C. § 2250 through reference to three "tiers" as set forth in 42 U.S.C. § 16911(2)–(4).  Specifically, § 2A3.5(a)(1) specifies a base offense level of sixteen "if the defendant was required to register as a Tier III offender."  The referenced Code section defines different tiers of offenders based on the severity of the offenders' underlying criminal offenses:

> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and–
>
> (A)   is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
> (i)    aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> (ii)   abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
> (B)   involves kidnapping of a minor (unless committed by a parent or guardian); or
> (C)   occurs after the offender becomes a tier II sex offender.

42 U.S.C. § 16911(4); see also id. § 16911(2) & (3) (defining tier I and II offenders, respectively).

Like many recidivist statutes, § 16911 speaks in terms of the comparability of a defendant's prior crimes of conviction to certain enumerated crimes. Here, one of the enumerated crimes is sexual abuse as defined in 18 U.S.C. § 2242. Two possible means of violating § 2242(2) are by "engag[ing] in a sexual act with another person if that other person is (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act . . . ." As the district court noted, our cases have held that performing a sexual act upon a person who is sleeping meets the requirements of § 2242(2)(B). See United States v. Wilcox, 487 F.3d 1163, 1169 (8th Cir. 2007) ("A reasonable jury may conclude that a person who is asleep when a sexual act begins is physically unable to decline participation in that act."); United States v. Barrett, 937 F.2d 1346, 1348 (8th Cir. 1991) (describing evidence sufficient to show a state of incapacity within the meaning of § 2242(2)(B)).

Lowry argues that because his Illinois offense predated SORNA, and because Illinois was not in compliance with SORNA, he technically was never "required to register as" any particular tier of offender. U.S.S.G. § 2A3.5(a). He also argues that, based on application of the rule of lenity, his base offense level should be computed using the lowest tier, Tier I. In the alternative, he argues that the actual registration and reporting requirements that Illinois imposed upon him were similar to federal registration and reporting requirements as set forth for Tier I offenders in 42 U.S.C. §§ 16915 and 16916. He asserts that this similarity demonstrates he was "required to register" in a manner comparable to the Tier I offender requirements of §§ 16915 and 16916 and therefore should be sentenced accordingly in the present case.

We reject Lowry's creative, but hypertechnical argument. The district court properly followed the process unambiguously set forth in the Guidelines and the Code

by comparing Lowry's underlying Illinois conviction to the crimes listed in § 16911(4)(A)(i). Section 16911, which references underlying offenses, is the classification or definition section for the three different tiers of offenders. Sections 16915 and 16916 are purely derivative, and they describe reporting requirements corresponding to each of the three tiers established in § 16911. These latter two sections merely set forth the consequences that flow from the determination of an applicable tier; they are not themselves tools to be used for defining or determining an applicable tier. Lowry's attempt to reverse the order of this system by using §§ 16915 and 16916 as the means to determine an applicable tier is contrary to the language and organization of the statute.

In enacting § 2A3.5(a), the Sentencing Commission was carrying out a mandate from the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248. In section 141 of that Act, Congress created 18 U.S.C. § 2250(a) and "included a directive to the Commission that when promulgating guidelines for the offense, to consider, among other factors, the seriousness of the sex offender's conviction that gave rise to the requirement to register; relevant further offense conduct during the period for which the defendant failed to register; and the offender's criminal history." U.S.S.G. App. C, Amendment 701 (Reason for Amendment). Accordingly, Congress expressly provided that the anticipated Guidelines were to account for the seriousness of the underlying offense. Congress did not instruct the Commission to establish offense levels through reference to registration requirements that states previously had imposed on defendants.

Similarly, Congress did not suggest that a state's compliance with SORNA should impact a defendant's sentencing. As such, we reject Lowry's separate argument that section 2A3.5(a)(1) does not apply to defendants who were sentenced and required to register as sex offenders before the creation of SORNA and the tier system. The Sentencing Commission chose to use the language "required to register *as* a Tier III offender," § 2A3.5(a)(1) (emphasis added), and Lowry seizes upon this

language to infer that the Commission must not have intended § 2A3.5(a)(1) to apply to pre-SORNA state offenders. We find no suggestion, however, that the Commission intended this Guidelines section to have a restricted and technical meaning that would exclude application to an entire class of defendants (many of whom would be sufficiently dangerous to be classified as Tier III offenders). Lowry's argument in this regard is an attempt to create an ambiguity in the Guidelines where none exists. There was no procedural error in the calculation of Lowry's adjusted Guidelines range.

Regarding the substantive reasonableness of Lowry's term of incarceration and supervised release, we find no abuse of discretion. The district court applied the § 3553(a) factors and noted in particular that Lowry had exhibited a repeated refusal to abide by his previously imposed registration requirements. His lengthy criminal history, the nature of his offenses, and his repeated failure to register caused the district court to conclude that he was a danger to society who posed a high risk of recidivism. The court took particular note of his acts of animal torture committed as an adult and reasonably imposed a sentence above the Guidelines range. The district court did not abuse its discretion.

Similarly, the district court did not abuse its discretion in imposing the substantial term of supervised release. Lowry's present offense of conviction coupled with his repeated prior registration violations strongly suggest that the district court was reasonable in its view that Lowry would remain in need of a substantial period of oversight following completion of his prison term.

We affirm the judgment of the district court.

_____