NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0811n.06

No. 11-1666

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Dec 05, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )
v.                                      )       ON  APPEAL  FROM  THE  UNITED
                                        )       STATES DISTRICT COURT FOR THE
TROY LAMAR WALKER,                      )       WESTERN DISTRICT OF MICHIGAN
                                        )
        Defendant-Appellant.            )


Before: BATCHELDER, COLE, and, COOK Circuit Judges.


        COOK, Circuit Judge.  Troy Lamar Walker ("Walker") pleaded guilty to one count of failing

to register as a sex offender in violation of 18 U.S.C. § 2250(a).  The district court sentenced him to

24 months' imprisonment.  On appeal, Walker challenges both the procedural and substantive

reasonableness of the district court's sentence.  For the following reasons, we **AFFIRM**.


                                        I.


        On December 4, 1998, law enforcement officials in Wake County, North Carolina arrested

Walker after he abducted and sexually assaulted his estranged wife.  On September 5, 2000, a jury

found Walker guilty of second-degree rape, second-degree sexual offense, violating a domestic

violence protection order, felonious restraint, and two counts of misdemeanor assault on a female.

The Wake County Superior Court sentenced him to 73 to 97 months' imprisonment followed by 60 months' probation. He was paroled on December 31, 2004.

On October 3, 2005, Walker signed forms acknowledging his obligations under North Carolina's Sex Offender and Public Protection Registration program, which required him to register as a sex offender and inform appropriate state officials whenever he moved to a new residence, including out-of-state addresses. Since North Carolina's program categorized him as a "Sexual Offender" but not an "Aggravated Offender" or "Sexually Violent Predator," the duration of Walker's state law registration requirement was ten years.

In 2006, Congress passed the Sex Offender Registration and Notification Act ("SORNA"). SORNA sorts offenders into three tiers to determine the duration of their registration obligations. Tier III includes any "sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)." 42 U.S.C.A. § 16911(4). Tier III offenders must register for life. *Id.* § 16915(a)(3). Tier II includes offenders convicted of sex offenses against minors. *Id.* § 16911(3). Individuals in Tier II must register for 25 years. *Id.* § 16915(a)(2). SORNA designates all offenders not included in Tiers II or III as Tier I offenders who must register for 15 years. *Id.* § 16911(2); § 16915(a)(1). SORNA's registration requirements apply to offenders whose convictions pre-date the statute. 28 C.F.R. § 72.3. Walker concedes that his conviction for second-degree rape in North Carolina makes him a Tier III offender under SORNA. Walker's parole was

revoked for reasons unspecified in November 2006. He remained incarcerated until February 5, 2008, when his prison term ended with no parole to follow.

Walker last verified his address on April 13, 2009, at the Harnett County Sheriff's Department. On June 29, 2009, he contacted the Harnett County Sheriff's Department again to inform them that he was moving, but did not provide a specific address for his prospective residence. On July 2, 2009, a felony warrant was issued for Walker's arrest after North Carolina officials were unable to verify his current address. On December 1, 2010, United States Marshals Service ("USMS") officials in North Carolina learned that Walker resided in Lansing, Michigan. They forwarded this information to the USMS office in the Western District of Michigan. Michigan State Police arrested Walker the next day and remanded him to USMS custody.

Walker pled guilty to one count of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). The United States Sentencing Guidelines Manual calculates the base offense level for sex offender registration violations by looking to the offender's SORNA tier classification—Tier I offenders are assigned a base offense level of 12; Tier II offenders, 14; and Tier III offenders, 16. In its Presentence Report, the United States Probation Office noted that Walker's North Carolina conviction for second-degree rape qualified him as a Tier III offender and assigned him the corresponding base offense level of 16.

Walker objected to his base offense level calculation. He asserted that though he was aware of his duty to register under North Carolina law, he was not aware of SORNA's three-tiered

registration scheme at the time of his arrest. Since North Carolina law only required him to register for ten years, Walker argued, he should be sentenced as a Tier I offender. The district court overruled this objection, applied the Tier III designation, and used the corresponding base offense level of 16 to calculate an advisory imprisonment range of 18-24 months. In its statement of reasons, the district court examined the § 3553(a) factors and expressed concern over Walker's "patterned behavior" of violence toward women and his history of violations on probation and parole. The court then sentenced Walker to 24 months' imprisonment. This appeal followed.

## II.

We review a district court's sentencing decision under a two-part test, ensuring first "that the district court committed no significant procedural error," and second the substantive reasonableness of the sentence imposed. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## A.

*Gall* provides a non-exhaustive list of procedural errors, including "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." 552 U.S. at 51.

Here, Walker's procedural challenges all stem from his assertion that the district court improperly calculated the Guidelines by assigning him a base offense level of 16, the level specified for Tier III SORNA offenders. Walker does not challenge his conviction under SORNA, nor does he dispute the factual premise that his 2000 North Carolina conviction qualifies him as a Tier III offender under the relevant SORNA provisions. Instead, he seems to ground his three procedural challenges on the assumption that North Carolina registration law trumps federal registration law. That is, because North Carolina law only required him to register for ten years—even less than the period for a Tier I offender under SORNA—the federal district court erred by using the offense level of a Tier III offender at sentencing. In the process, Walker peppers his appellate brief with generic references to "the government," "officials," and "the law" in an apparent effort to blur the line between state and federal officials and the distinct sets of laws that they enforce. For the reasons that follow, Walker's arguments fail.

Walker first asserts that sentencing him as a Tier III offender violated his due process rights because he "was not provided with proper notice regarding the effects of SORNA." Walker acknowledges that he "was aware of a duty to register . . . under state law," which he concedes suffices to establish notice for the purposes of his SORNA conviction. *See, e.g.*, *United States v. Samuels*, 319 F. App'x 389, 393 (6th Cir. 2009), ("Samuels's prior knowledge of his duty to register under state law qualified as effective notice under SORNA."), *overruled on other grounds by United States v. Cain*, 583 F.3d 408 (6th Cir. 2009). He argues, however, that because the government failed to provide him "with information regarding the retroactive classification system under SORNA," his

5

sentencing guideline range must "reflect a classification that is comparable to that under [North Carolina] law."

Walker has it wrong. SORNA did not disturb his classification under North Carolina law, nor did the court's use of Walker's Tier III SORNA designation affect his North Carolina registration requirements. SORNA instead established his registration obligations and offense level under federal law. Thus, there was no "retroactivity" in Walker's Tier III SORNA classification. Walker concedes that he knew he was required to register as a sex offender when he moved to Michigan. That is all the notice required for the purposes of SORNA. Walker's appellate brief cites no authority for the proposition that his classification under state law can affect, much less dictate, his sentencing guideline range for a federal crime. We therefore reject his "notice" challenge.

Next, Walker argues that the doctrine of equitable estoppel bars the district court's application of the Tier III offense level. This Circuit recognizes three "traditional elements of equitable estoppel . . . : (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). A party asserting estoppel against the government "must demonstrate some 'affirmative misconduct' by the government in addition to the other estoppel elements." *Id.*

According to Walker, since North Carolina documents and officials told him that he only needed to register for ten years, the estoppel doctrine forbade the district court from sentencing him

as a Tier III offender. But even if Walker relied on statements made by North Carolina officials, he cites no affirmative misconduct by the United States, the party against whom he attempts to assert estoppel. Walker cannot impute the words of North Carolina state officials regarding North Carolina law to federal officials applying federal law. Similarly, as to the "reasonable reliance" element, Walker points to no government officials—much less federal officials—who addressed him about his federal classification under SORNA, as opposed to his classification under state law. Walker also does not specify how he relied on any "official statements" to his detriment, since his SORNA arrest occurred well within even the fifteen-year window of Tier I. As the district court noted at sentencing:

> And it's important, I think, to note as well that in this case it's not as though the duration of the registration period is material to whether the conviction for failure to register is valid or not. Everybody agrees even within the shortest possible registration window the registration was not done here.

For these reasons, we reject Walker's estoppel challenge.

Last, Walker argues that the district court's "retroactive application of SORNA to [his] original sexual offense" violates the *ex post facto* clause. He acknowledges that given the nonpunitive and regulatory nature of SORNA's registration obligations, courts forgo *ex post facto* analysis of its requirement that he register for life. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 93 (2003) ("[A]n imposition of restrictive measures on sex offenders adjudged to be dangerous is 'a legitimate nonpunitive governmental objective . . . .'") (citation omitted). His classification as a Tier III offender under SORNA thus does not, by itself, present any *ex post facto* concerns.

7

Walker nonetheless argues that use of the Tier III classification to determine his sentencing guideline range offends the *ex post facto* clause because it "raised" his penalty from what it had been under North Carolina law. As noted previously, however, the use of Walker's SORNA tier classification at sentencing did not "raise" his state law penalty or "retroactively" alter his state law obligations. It instead provided his advisory range of imprisonment for a federal crime using federal guidelines. As with his "notice" argument, Walker cites no authority suggesting that the *ex post facto* clause requires courts to look to an offender's state law registration obligations when determining his offense level under federal law. As the district court explained:

> [T]he underlying conviction that drives the registration hasn't changed. It's a North Carolina conviction. It is what it is. And we're simply now applying the definitional categories of that conviction against the definitions in the registration requirement for the federal act, and the punishment is imposed accordingly.

Assigning Walker an offense level based on his Tier III SORNA classification thus does not violate the *ex post facto* clause.

## B.

We also reject Walker's substantive challenge. Appellate courts review the substantive reasonableness of a defendant's sentence for abuse of discretion. *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). "The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008). Examples of substantive unreasonableness include "selecting the sentence arbitrarily, basing the

sentence on impermissible factors, failing to consider pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005).

Walker does not claim that the district court committed any recognized error in determining his sentence. Instead, he argues that a sentence based on the guideline range for a Tier I offender would "better serve" and "better reflect" the goals of § 3553(a), and that a "shorter time[] of incarceration would [be] sufficient" to deter Walker from further violations. Our task, however, is not to determine whether a shorter sentence would be "better" or "sufficient," but rather whether the district court's sentence was unreasonable. Here, the district court's statement of reasons shows that it arrived at its sentence after a reasoned consideration of the § 3553(a) factors, giving particular attention to the nature of the offense conduct and Walker's history and characteristics. Walker points to no error or statement in the record suggesting that the district court ignored or accorded impermissible weight to a § 3553(a) factor or otherwise determined his sentence unreasonably.

III.

For these reasons, we AFFIRM the district court's judgment.