NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0603n.06

Case No. 15-3061

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Aug 26, 2015

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| CHARLES J. GUDGER | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SUTTON and DONALD, Circuit Judges; ZOUHARY, District Judge.[*]

ZOUHARY, District Judge. Defendant-Appellant Charles Gudger challenges his 18-month sentence for violating 18 U.S.C. § 2250(a). Gudger primarily claims that state law should control his tier assignment under U.S.S.G § 2A3.5(a) and, therefore, his base offense level. We disagree, and affirm the district court's sentence.

***Base Offense Level Under U.S.S.G § 2A3.5***. We review a district court's legal conclusions about Guidelines application de novo and related factual findings for clear error. *United States v. Kilgore*, 749 F.3d 463, 464 n.3 (6th Cir. 2014). Gudger pled guilty to violating 18 U.S.C. § 2250(a). In 2013–14, Gudger lived in Texas but registered as a sex offender only in

---

[*] The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

Ohio. He regularly traveled between the two states, in part to update his Ohio sex offender registration by claiming he still resided in the Buckeye State.

A few facts are essential to Gudger's sentencing argument. Gudger stresses that his 1989 Ohio rape conviction predates the federal Sex Offender Registration and Notification Act's ("SORNA") effective date. Gudger further stresses that, when initially paroled in 2004 after serving fourteen years in state prison, Ohio required him to register as a "sexually oriented offender" for a term of ten years. And Gudger claims "it is uncontested that the [sex offender registration] status of Mr. Gudger was Tier I" under state law.

Gudger then turns to the text of U.S.S.G. § 2A3.5(a), the start of the Guidelines calculation for a Section 2250(a) defendant:

> Base Offense Level (apply the greatest): (1) 16, if the defendant was required to register as a Tier III offender; (2) 14, if the defendant was required to register as a Tier II offender; or (3) 12, if the defendant was required to register as a Tier I offender.

Gudger argues when he "committed the SORNA offense, he was required to register [in Ohio] as a Tier I offender. As such, the district court was bound by Ohio's Tier determination." End of analysis, Gudger says.

But his analysis ignores a fundamental starting point. The three tiers referenced in Section 2A3.5(a) are defined terms whose meaning is found in 42 U.S.C. § 16911. U.S.S.G. § 2A3.5, app. note 1. Gudger admits that, ordinarily, "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). However, he disregards Application Note 1 because, he says, its reference to SORNA tier definitions is inconsistent with the Guidelines' reference to the tier he "was required to register as" when he violated Section 2250(a): namely, Ohio's tier I.

2

Gudger's argument unravels because he pled guilty to being "required to register under" SORNA, traveling in interstate commerce, and "knowingly fail[ing] to update his registration" as required by SORNA. His guilty plea shows he was prosecuted for failing to maintain his SORNA registration, not for any defect in his Ohio registration status. *Cf. United States v. Stock*, 685 F.3d 621, 626 (6th Cir. 2012) (explaining a defendant who pleads guilty to violating Section 2250(a) "cannot now take the position -- contrary to his plea -- that he didn't know about" his SORNA obligation).

The Application Note's reference to SORNA tiers therefore makes sense: A district court applies Section 2A3.5 to fix punishment for failure to comply with the SORNA requirement that "[a] sex offender . . . register, and keep the registration current, in each jurisdiction where the offender resides." 42 U.S.C. § 16913(a). SORNA itself specifies how, and for how long, a sex offender must register. *See id*. §§ 16913(b)–(c), 16915, 16916. And, "SORNA became retroactive to pre-enactment offenders on August 1, 2008." *United States v. Stevenson*, 676 F.3d 557, 566 (6th Cir. 2012). In light of this separate, retroactive federal obligation, a district court has no need to tailor its base offense level decision to the state-law tier applicable to a pre-SORNA sex offense conviction. There is no conflict between the Guideline text and Application Note 1.

Because Application Note 1 is authoritative, a district court looks to SORNA to place a defendant in a tier. Under SORNA, "[t]he term 'sex offender' means an individual who was convicted of a *sex offense*." 42 U.S.C. § 16911(1) (emphasis added). Relevant here, a "sex offense" is "a *criminal offense* that has an element involving a sexual act or sexual contact with another." *Id*. § 16911(5)(A)(i) (emphasis added). And a "criminal offense," "means a State, local, tribal, foreign, or military offense . . . or other criminal offense." *Id*. § 16911(6). Tying

3

these definitions together, SORNA extends to a person convicted of a crime that involves a sexual act or sexual contact with another, no matter the jurisdiction in which the conviction was entered. Gudger's only prior sex offense is his 1989 Ohio rape conviction.

SORNA sweeps broadly, but its broad sweep discriminates among three sex offender tiers "depending on the seriousness of [the defendant's] underlying sex offense." *United States v. White*, 782 F.3d 1118, 1129 (10th Cir. 2015). Relevant here, a "tier III sex offender" is a "sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than" the federal crimes of aggravated sexual abuse or sexual abuse. 42 U.S.C. § 16911(4). A "tier II sex offender" is a "sex offender other than a tier III offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than" certain enumerated crimes involving minor victims. *Id.* § 16911(3). If the sex offense does not fit either tier III or tier II, tier I applies by default. *Id.* § 16911(2).

The district court assigned to Gudger a tier III base offense level 16 because his 1989 conviction was "forc[i]ble sexual conduct in Ohio [and] comparable to aggravated sexual abuse or sexual abuse," as the latter two offenses are defined in federal law. Gudger does not dispute that his Ohio rape conviction is comparable to aggravated sexual abuse under 18 U.S.C. § 2241. The district court therefore correctly classified Gudger as a tier III offender for purposes of Section 2A3.5.[1]

To Gudger, his Section 2A3.5 tier assignment may appear unfair. After all, Ohio assigned him to its lowest sex offender category, while his federal sentence is based on

---

[1] We do not decide whether the district court should have applied the categorical approach when placing Gudger in a SORNA tier. *See, e.g.*, *White*, 782 F.3d at 1135.

SORNA's most restrictive sex offender designation. Unfairness runs both ways though: if a state places a defendant in a state-law tier III even though SORNA only places the defendant in tier I, Gudger's theory would set that defendant's base offense level at 16. This distinction between federal and state law may be relevant for a variance argument, but is not grounds for ignoring Application Note 1.

Finally, pressing on past Guideline text, Gudger argues a district court should give effect to state-law registration obligations because of SORNA's reliance on states to administer the SORNA registration scheme. SORNA does not require sex offenders to register with a federal agency. Instead, an offender registers with the state agency where the offender lives, works, or studies. *See* 42 U.S.C. §§ 16912, 16913. However, SORNA does not tie the failure-to-register Guideline provision to any state registration system. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, 602–03 (July 27, 2006) (charging the Sentencing Commission with writing a failure-to-register Guideline provision accounting for "[t]he seriousness of the offense which gave rise to the requirement to register, including whether such offense is a tier I, tier II, or tier III offense, as those terms are defined in" language later codified at 42 U.S.C. § 16911).

***The District Court's Sentence Explanation***. Because Gudger did not object at sentencing to the district court's explanation, we review for plain error. *See United States v. Judge*, 649 F.3d 453, 458 (6th Cir. 2011). The explanation must show the district court had "a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (internal quotation marks omitted).

We find no plain error. The district court did not ignore Gudger's poor health in setting his sentence. Contrary to Gudger's claim that the district court disregarded his claimed

marijuana addiction, the district court expressly tailored its sentence to address that addiction. Noting the sentencing goals of Section 3553(a), the district court found that Gudger's history of violating state parole and federal pre-trial release was best accounted for by a prison term, not probation. Also, in light of Gudger's positive drug test while on federal pre-trial release and his earlier revocation of state parole, the district court could properly conclude Gudger's drug treatment needs would best be served by a prison term.

For these reasons, we affirm Gudger's sentence.