NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0462n.06

No. 15-4231

FILED
Aug 11, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MICHAEL KEITH SHEPARD,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    CLAY, ROGERS, and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant Michael Keith Shepard appeals the judgment of the district court sentencing him to 30 months' incarceration for failure to register as a sex offender as required by the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a)—his second conviction for this offense. For the reasons that follow, we **AFFIRM**.

## BACKGROUND

### 2009 Michigan Case – Underlying Offense

In 2009, Defendant Michael Keith Shepard arranged to meet what he thought was a fifteen-year-old girl for the purpose of having sexual intercourse. When the "girl" turned out to be an undercover deputy, he was arrested and pled guilty in Michigan state court to accosting a child for immoral purposes, in violation of Mich. Comp. Laws § 750.145a. As a result of his conviction, he was required to register as a sex offender.

**2012 Federal Case – Failure to Register**

In February 2012, Shepard's probation officer discovered his home in Michigan to be vacant. Some months later, federal investigators learned that Shepard had been living in Ohio from at least March to June 2012. He had notified neither Michigan nor Ohio authorities of his move, despite the requirement to do so. The United States District Court for the Southern District of Ohio issued an arrest warrant, and Shepard was apprehended at a homeless shelter in Texarkana, Texas on August 23, 2012.

After being extradited to Ohio, Shepard was charged federally for failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a), the same charge he faces in this case, and pled guilty. On October 9, 2012, Shepard signed a plea agreement with the government wherein the parties agreed that "U.S.S.G. § 2A3.5 . . . is the guideline applicable to the offense resulting in a base level of 12," but which also stated that recommendation regarding the Sentencing Guidelines was not binding on the court. (Case no. 2:12-cr-206, R. 12, Plea Agr. ¶ 5.1.) The plea agreement did not reproduce the text of U.S.S.G § 2A3.5, entitled "Failure To Register as a Sex Offender," which assigns a base offense level of 12 "if the defendant was required to register as a Tier I offender."

The Probation Department then prepared a pre-sentence investigation report ("PSR") recommending that Shepard be classified as a tier II sex offender, corresponding to a base offense level of 14, based on its comparison of the Michigan offense of which Shepard was convicted with definitions of sex offender classifications in the federal statute. After reviewing the PSR, the government, in its sentencing memorandum, all but admitted its mistake in its recommending a lower base offense level:

> The United States has reviewed the PSR in this case and submits that the advisory guideline sentencing range calculated by the Probation Officer may be technically

correct. This guideline range is based on a base offense level of 14, resulting from a finding that the defendant's prior sexual offense would be classified as a Tier II offense pursuant to 42 U.S.C. § 16911(3)(A)(ii). As a result of this base offense level, the PSR reflect [sic] an advisory guideline range for the defendant is [sic] 21 to 27 months, based on a total offense level 12 and a criminal history category IV.

In the plea agreement entered into by the defense and the government, the parties agreed that the base offense level applicable to the defendant is 12, premised on the parties' understanding that the defendant would be classified as a Tier I offender. This agreement was based on information provided to United States by the Ohio Attorney General's Office, regarding the defendant's registration requirements under Ohio law. While the government thus concedes that the base offense level determined by the probation officer may be a correct view of the U.S. Sentencing Guidelines and 42 USC § 16911, the government abides by the plea agreement entered into with the defendant, and agrees with the defendant's position that the Court should adopt a guideline range of 15 to 21 months.

(Case no. 2:12-cr-206, R. 21, Gov.'s Sentencing Mem. at Page ID 53.) On February 15, 2013, Shepard was sentenced to 18 months of imprisonment, followed by five years of supervised release. No transcript of this proceeding is available in the record. When Shepard failed to update or verify his registration with the Franklin County Sheriff's Office, the district court ordered his supervised release revoked on May 16, 2014.

**2015 Federal Case – Failure to Register**

After being released from incarceration for the supervised release violation in November 2014, Shepard again failed to verify his registration with Ohio authorities as required. On December 3, 2014, the United States District Court for the Southern District of Ohio issued another arrest warrant. Investigation revealed that he had been staying in various places in South Carolina since November 2014, and Shepard was arrested in South Carolina on February 2, 2015.

Shepard was then charged, for the second time, with failure to update his registration or register as a sex offender in violation of SORNA, 18 U.S.C. § 2250(a). Shepard pled guilty to

the offense on April 22, 2015 pursuant to a written plea agreement, which this time contained no mention of or agreement regarding what base offense level he was to receive at sentencing. As before, the subsequently prepared PSR recommended that Shepard's base offense level be set at 14 pursuant to U.S.S.G. § 2A3.5(a)(2). The Probation Department reasoned that he should be classified as a tier II sex offender because it found that the Michigan offense of accosting a child for immoral purposes "was comparable to coercion and enticement as described in 18 U.S.C. § 2422 and 42 U.S.C. § 16911(3)(A)(ii)." (R. 7, PSR ¶ 29.) After a recommended two-level reduction for acceptance of responsibility, the PSR calculated a final base offense level of 12. Based on a criminal history category of V, the PSR calculated an advisory Guidelines range of 27–33 months.

Shepard objected to the PSR, arguing that he should have been classified as a tier I offender. In his sentencing memorandum, he asserted that he was required to register as a tier I sex offender, which corresponded to a base offense level of 12. Defendant attached paperwork to the sentencing memorandum from the Franklin County, Ohio Sheriff's Office in which he appears to have been classified by the Ohio authorities as a tier I sex offender. In its sentencing memorandum, the government took no issue with the PSR's calculation of the Guidelines range.

At sentencing, Shepard argued that the discrepancy in potential sentence between his tier I classification by the Ohio authorities and his tier II classification in the PSR rendered U.S.S.G. § 2A3.5 unconstitutionally vague. The district court rejected this argument because the application notes to U.S.S.G. § 2A3.5 explained that the tier classifications—for federal sentencing purposes—were given the definitions set forth in 42 U.S.C. § 16911, with no reference to state law whatsoever. Based on a total offense level of 12 and a criminal history category of V, the district court calculated a Guidelines range of 27–33 months. Shepard was

sentenced to 30 months of imprisonment and 10 years of supervised release. Shepard timely appealed.

## DISCUSSION

### Standard of Review

When reviewing the procedural reasonableness of a sentence, an appellate court must "ensure that the district court properly calculated the advisory Guidelines range." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007). In reviewing the district court's calculation of the Guidelines range, this Court reviews its conclusions of law de novo and its factual findings for clear error. *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).

Where a criminal defendant does not object in the district court, despite having been given an opportunity to enter objections not previously raised, this Court reviews those arguments for plain error only. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). A showing of plain error requires "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (internal quotations omitted).

### Analysis

#### I. Whether U.S.S.G. § 2A3.5 is unconstitutionally vague

##### A. Due process principles

The Fifth Amendment to the United States Constitution "provides that [n]o person shall . . . be deprived of life, liberty, or property, without due process of law." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The government contravenes this core constitutional protection when it "impos[es] sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary

enforcement.'" *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) (quoting *id.*). This Court

has allowed vagueness challenges to Guidelines provisions as well as to statutes. *United States*

*v. Pawlak*, 822 F.3d 902 (6th Cir. 2016). Shepard argues that the language of U.S.S.G. § 2A3.5,

coupled with state law sex offender classification regimes and the enforcement of SORNA

through state sex offender registration agencies, failed to give him fair notice of the punishment

he would receive under federal law. To evaluate the merits of his claim, it is worth reviewing

state and federal sex offender classification schemes, as well as U.S.S.G. § 2A3.5 itself.

### B. State classification schemes and SORNA

Earlier this year, the Supreme Court summarized the history of federal and state sex

offender registration law as follows:

> Following the high-profile and horrific rape and murder of 7–year–old Megan
> Kanka by her neighbor, States in the early 1990's began enacting registry and
> community-notification laws to monitor the whereabouts of individuals
> previously convicted of sex crimes. See *Smith v. Doe,* 538 U.S. 84, 89 (2003);
> Filler, Making the Case for Megan's Law, 76 Ind. L.J. 315, 315–317 (2001).
> Congress followed suit in 1994 with the Jacob Wetterling Crimes Against
> Children and Sexually Violent Offender Registration Act, 108 Stat. 2038, 42
> U.S.C. § 14071 *et seq.* (1994 ed.). Named after an 11–year–old who was
> kidnapped at gunpoint in 1989 (and who remains missing today), the Wetterling
> Act conditioned federal funds on States' enacting sex-offender registry laws
> meeting certain minimum standards. *Smith,* 538 U.S., at 89–90. "By 1996, every
> State, the District of Columbia, and the Federal Government had enacted some
> variation of" a sex-offender registry. *Id.,* at 90.
>
> In 2006, Congress replaced the Wetterling Act with the Sex Offender Registration
> and Notification Act (SORNA), 120 Stat. 590, 42 U.S.C. § 16901 *et seq.* . . .
> Congress made it a federal crime for a sex offender who meets certain
> requirements to "knowingly fai[l] to register or update a registration as required
> by [SORNA]." 18 U.S.C. § 2250(a)(3); see *Carr v. United States,* 560 U.S. 438,
> 441–442 (2010).

*Nichols v. United States*, 136 S. Ct. 1113, 1116 (2016). Travel in interstate or foreign commerce,

combined with the failure to register in a new jurisdiction, is an offense punishable by a fine and

up to ten years' imprisonment. 18 U.S.C. § 2250(a).

In order to keep registration current, a sex offender must, within three days of changing residence, appear in person in at least one jurisdiction in which he is required to register to report the change. 42 U.S.C. § 16913(c). SORNA established three tiers of sex offenders; tier II and tier III are defined by reference to certain enumerated offenses described elsewhere in federal law, and all remaining sex offenders are classified as tier I. *See* 42 U.S.C. § 16911(1)–(3). SORNA did not create a national enforcement agency; rather, it "directed all states and the District of Columbia to create local registries that comply with specific national standards." *United States v. Felts*, 674 F.3d 599, 602 (6th Cir. 2012) (citing 42 U.S.C. §§ 16911(10), 16912(a)). Thus, failure to register with a state agency based on an underlying state conviction for a sex offense can result in federal charges, as it has in this case.

At risk of losing federal funds, states responded to SORNA by updating their sex offender registration laws, including the classification of sex offenders. Prompted by SORNA's enactment the previous year, Ohio in 2007 "repealed Megan's Law and replaced it with a new, retroactive scheme that includes the tier system required by Congress." *State v. Bodyke*, 933 N.E.2d 753, 759 (Ohio 2010). As a result, "[t]he former categories of sexually oriented offender, habitual sex offender, and sexual predator no longer exist . . . Instead, offenders are classified as Tier I, Tier II, or Tier III sex offenders (or child-victim offenders) based solely on the offender's offense." *Id.* In 2011, Michigan amended its sex offender registration statute to classify sex offenders "into three tiers according to the offenses of which they were convicted." *People v. Tucker*, 879 N.W.2d 906, 914 (Mich. Ct. App. 2015). Public Act 17 of 2011 amended Mich. Comp. Laws § 28.722 to define tier I, tier II and tier III sex offenders.[1] As a result of the 2011 changes, that section of Michigan law specifically lists Mich. Comp. Laws § 750.145a, the

---

[1] The text of the bill, effective April 12, 2011, is available online at http://www.legislature.mi.gov/documents/2011-2012/publicact/pdf/2011-PA-0017.pdf

statutory provision for Shepard's underlying offense of accosting for immoral purposes, as a "Tier II offense." Mich. Comp. Laws § 28.722(u)(i). Although they both borrow the "tier" terminology from the federal statute, the Michigan and Ohio tier designations do not necessarily align; while the record shows that the Ohio authorities classified Shepard as a tier I sex offender as a matter of Ohio law, it appears that he was classified as a tier II sex offender under Michigan law before he moved to Ohio in 2012.

Some background regarding the coexistence of federal and state law in the arena of sex offender registration and classification is necessary to evaluate Shepard's vagueness challenge, but all of this information is, in some sense, beside the point. Shepard is currently in federal court for a violation of federal law, for which he was sentenced pursuant to the United States Sentencing Guidelines—which themselves cross-reference the federal SORNA statute. With that in mind, we turn to the merits of Shepard's vagueness challenge to the section of the Guidelines under which he was sentenced, U.S.S.G § 2A3.5.

## C. Whether U.S.S.G § 2A3.5 is unconstitutionally vague

Defendant argues that the section of the Guidelines applicable to failure to register as a sex offender, U.S.S.G. § 2A3.5, is unconstitutionally vague because it fails to provide "fair notice of the conduct it punishes." (Def.'s Br. at 12 (quoting *Johnson*, 135 S. Ct. at 2556.)) Section 2A3.5 reads, in relevant part:

(a) Base Offense Level (apply the greatest):
    (1) 16, if the defendant was required to register as a Tier III offender;
    (2) 14, if the defendant was required to register as a Tier II offender; or
    (3) 12, if the defendant was required to register as a Tier I offender.

U.S.S.G. § 2A3.5. Shepard argues that this language "implies that a defendant's base offense level will be determined using" the tier classification of the state of residence.[2] (Def.'s Br. at 14.) Referencing the paperwork that the Ohio agency gave to him listing a tier I classification, Shepard asserts that because "Ohio required Mr. Shepard to register as a Tier I offender, and SORNA relies on state agencies to administer the SORNA registration scheme . . . Mr. Shepard did not have fair notice that his failure to register under Tier I could result in a punishment driven by a Tier II classification." (*Id.* at 15.) Making much of the government's initial confusion prior to the execution of the 2012 plea agreement, he further claims that the "federal court in 2012 [sic] told Mr. Shepard he was a Tier I offender"—an assertion not verifiable on this record—and his subsequent failure to register "yielded a punishment under a higher Tier designation without fair notice." (*Id.*)

Shepard's argument is made even remotely plausible only by the notable and troubling omission in his brief of the application notes in the commentary to U.S.S.G. § 2A3.5, which we recently described as the "fundamental starting point" of the sentencing analysis under SORNA. *United States v. Gudger*, 624 F. App'x 394, 396 (6th Cir. 2015). Application note 1 to U.S.S.G. § 2A3.5, which was the basis of the district court's rejection of Shepard's vagueness challenge, explains that "'Tier I offender', 'tier II offender', and 'tier III offender' have the meaning given the terms 'tier I sex offender', 'tier II sex offender', and 'tier III sex offender', respectively, in 42

---

[2] He does not argue, however, that state classification and/or registration law are controlling, an argument we have rejected in two recent unpublished opinions. *See United States v. Gudger*, 624 F. App'x 394, 396 (6th Cir. 2015) (applying federal tier classifications where the defendant was "prosecuted for failing to maintain his SORNA registration, not for any defect in his Ohio registration status"); *United States v. Walker*, 450 F. App'x 464, 467 (6th Cir. 2011) (rejecting challenges predicated "on the assumption that North Carolina registration law trumps federal registration law").

U.S.C. 16911." 42 U.S.C. § 16911 in turn defines the tier classifications for sex offenders as

follows:

> (2) Tier I sex offender
> The term "tier I sex offender" means a sex offender other than a tier II or tier III sex offender.
> (3) Tier II sex offender
> The term "tier II sex offender" means a sex offender other than a tier III sex offender whose offense is punishable by imprisonment for more than 1 year and--
>> (A) is comparable to or more severe than the following offenses, when committed against a minor, or an attempt or conspiracy to commit such an offense against a minor:
>>> (i) sex trafficking (as described in section 1591 of Title 18);
>>> (ii) coercion and enticement (as described in section 2422(b) of Title 18);
>>> (iii) transportation with intent to engage in criminal sexual activity (as described in section 2423(a)) of Title 18;
>>> (iv) abusive sexual contact (as described in section 2244 of Title 18);
>> (B) involves--
>>> (i) use of a minor in a sexual performance;
>>> (ii) solicitation of a minor to practice prostitution; or
>>> (iii) production or distribution of child pornography; or
>> (C) occurs after the offender becomes a tier I sex offender.
> (4) Tier III sex offender
> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and--
>> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>>> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
>>> (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
>> (B) involves kidnapping of a minor (unless committed by a parent or guardian); or
>> (C) occurs after the offender becomes a tier II sex offender.

42 U.S.C. § 16911.

U.S.S.G. § 2A3.5, its application notes, and 42 U.S.C. § 16911 together "unambiguously"

set forth a "process" for a sentencing court to follow. *United States v. Lowry*, 595 F.3d 863, 866

(8th Cir. 2010). Guided by the application note to § 2A3.5, which is binding, *see United States*

*v. Douglas*, 634 F.3d 852, 862 (6th Cir. 2011), a sentencing court is to apply 42 U.S.C. § 16911,

a statute that "speaks in terms of the comparability of a defendant's prior crimes of conviction to

certain enumerated crimes." *Lowry*, 595 F.3d at 866. The next step, naturally, is to compare the state offense with the federal offense and select the proper tier classification under the federal statute. *See, e.g.*, *United States v. Backus*, 550 F. App'x 260, 262–64 (6th Cir. 2014) (comparing language and definitions in a Florida statute to those of 18 U.S.C. § 2243(a)). In this case, the district court went through the required steps and ruled that Shepard's Michigan accosting conviction was for an offense comparable to coercion and enticement, as defined in 18 U.S.C. §2422(b).[3]

Shepard proceeds as though his own personal confusion about state and federal law due to the communications he has received from the Ohio state agency and from the government attorney at the plea agreement stage in 2012 are dispositive as to the constitutionality of the statute, which they are not. His argument that he had no inkling that he could have been subject to punishment as a tier II sex offender is also undercut by the government's sentencing memorandum in the prior case, in which it practically acknowledged that under federal law, Shepard was a tier II sex offender.

Nothing about this statutory scheme is "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Welch*, 136 S. Ct. at 1262. That the process for determining a base offense level under U.S.S.G. § 2A3.5 entails several steps does not render it unconstitutionally vague. The process for determining a base offense level for Shepard's violation of the federal SORNA statute is clearly set forth as a

---

[3] Counsel for Shepard stated at oral argument that the district court's analysis on this point was insufficient, but because he did not brief this issue, it is not properly before the Court. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) (holding that "[a]n appellant abandons all issues not raised and argued in its initial brief on appeal"). Where a defendant does not actually contest the district court's comparison of federal and state law, this Court should therefore leave the lower court's analysis undisturbed. *See Gudger*, 624 F. App'x at 397 (summarily affirming where the defendant "d[id] not dispute that his Ohio rape conviction is comparable to aggravated sexual abuse under 18 U.S.C. § 2241").

matter of federal law alone. Any potential conflict with Ohio tier classification is entirely irrelevant. *See Gudger*, 624 F. App'x at 396. We therefore reject Shepard's vagueness challenge, and find no error in the district court's calculation of the Guidelines range.

## II.     Collateral estoppel

Shepard argues that the government is collaterally estopped from arguing that he should be classified as a tier II sex offender because it purportedly agreed at the sentencing for the 2012 case that he should be classified as a tier I sex offender. However, Shepard did not enter this objection at his sentencing in this case, and we therefore review for plain error. *Vonner*, 516 F.3d at 385. To establish plain error, a defendant must demonstrate the following:

> (1) error, (2) that was plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affected the fairness, integrity or public reputation of the judicial proceedings.

*United States v. Collins*, 799 F.3d 554, 575 (6th Cir. 2015).

The Supreme Court has described the conditions for a finding of plain error as "limitation[s] on appellate authority," one of which is "that the error be 'plain.'" *United States v. Olano*, 507 U.S. 725, 734 (1993). A court of appeals "cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* "A lack of binding case law that answers the question presented will . . . preclude [a] finding of plain error." *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015).

Shepard concedes in his brief that "[w]hether the doctrine of collateral estoppel applies to a sentencing proceeding is not clearly settled in the Sixth Circuit." (Def.'s Br. at 1.) As recently as 2008, this Court stated that it "kn[e]w of no case . . . where a federal court has ascribed preclusive effect to a sentencing court's findings of fact." *Kosinski v. C.I.R.*, 541 F.3d 671, 679 (6th Cir. 2008); *see also United States v. Nichols*, 100 F. App'x 524, 531 (6th Cir. 2004), *vacated*

*in part on other grounds sub nom. Smith v. United States*, 543 U.S. 1180 (2005) ("[w]hether collateral estoppel applies to determinations made in sentencing proceedings is not settled"); *United States v. Roberts*, 59 F. App'x 86, 87 (6th Cir. 2003) ("[w]hat is unclear, both in the Sixth Circuit and in the other Circuits, is the question presented by this case: whether a defendant can invoke the doctrine defensively in regard to a determination made by a judge in a prior sentencing-particularly where that determination is legal and not factual"). No published case law since has held that the determinations of a sentencing court may have preclusive effect.[4]

No panel of this Circuit has ever unambiguously held that a defendant may use collateral estoppel defensively based on a prior sentencing proceeding at which that defendant was present, much less that a district court is obliged to invoke the doctrine of collateral estoppel in a sentencing proceeding against the government sua sponte. Accordingly, Shepard has failed to establish plain error.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.

---

[4] In a 2010 case, we appeared to entertain a collateral estoppel challenge by a criminal defendant, without explicitly ruling on the applicability of the doctrine to sentencing proceedings, when it decided that the government was not bound by a mistaken restitution amount in a co-defendant's plea agreement accepted by the district court in a separate proceeding. *United States v. Williams*, 612 F.3d 500, 513 (6th Cir. 2010). However, we held that the "mandatory language" of an applicable statute "trump[ed] the equitable policies underlying the discretionary doctrines of collateral estoppel and judicial estoppel." *Id.*